IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDRE K. GREEN,<br>    Petitioner,<br><br>    v.<br><br>LOUIS S. FOLINO,[1]<br>    Respondent. | :<br>:<br>:<br>:<br>:  CIVIL ACTION NO. 03-674<br>:<br>:<br>:<br>:<br>: |

**MEMORANDUM**

YOHN, J.                                                                                        November 2, 2010

Petitioner Andre K. Green, a prisoner at State Correctional Institution, Greene County, in Waynesburg, Pennsylvania, has filed a second amended petition for a writ of habeas corpus under 28 U.S.C. § 2254. For the reasons that follow, I will deny Green's petition.

**I.    FACTUAL AND PROCEDURAL HISTORY[2]**

Green was convicted on October 17, 1996, of second-degree murder and attempted robbery following a jury trial in the Court of Common Pleas for Northampton County, Pennsylvania. He was sentenced to a mandatory term of life imprisonment. Following his conviction, Green appealed to the Superior Court of Pennsylvania, which affirmed his judgment

---

[1] Green originally brought suit against William Stickman, then the superintendent of State Correctional Institution, Greene County, in Waynesburg, Pennsylvania. Louis S. Folino has replaced Stickman as superintendent.

[2] This summary is drawn largely from my July 26, 2006, and November 8, 2004, memoranda and orders. *Green v. Folino*, No. 03-674, 2006 U.S. Dist. LEXIS 51103 (E.D. Pa. July 26, 2006); *Green v. Stickman*, No. 03-674, 2004 U.S. Dist. LEXIS 22624 (E.D. Pa. Nov. 8, 2004).

of sentence on October 14, 1997. *Commonwealth v. Green*, 704 A.2d 1117 (Pa. Super. Ct. 1997). Green then filed a petition for allowance of appeal with the Supreme Court of Pennsylvania, which was denied on March 12, 1998. *Commonwealth v. Green*, 712 A.2d 285 (Pa. 1998).

On February 26, 1999, Green filed a *pro se* petition under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. §§ 9541–9546. After appointing counsel for Green and conducting a PCRA hearing on December 23, 1999,[3] the PCRA court denied relief in an opinion and order dated December 30, 1999, but permitted Green to file an amended petition raising three new claims. *Commonwealth v. Green*, No. 445-1996 (Pa. Ct. C.P. Northampton County Dec. 30, 1999) ("*Green I*") (attached as Ex. A to Pet'r's Mem. of Law in Supp. of 2d Am. Pet. for Writ of Habeas Corpus ("Pet'r's Mem.")). The PCRA court held another hearing on May 24, 2001, to address the new claims and, on June 29, 2001, denied the amended PCRA petition. *Commonwealth v. Green*, No. 445-1996 (Pa. Ct. C.P. Northampton County June 29, 2001). Green filed a timely appeal as to both sets of claims in the Pennsylvania Superior Court, and that court affirmed the PCRA court's denial of relief on March 25, 2002. *Commonwealth v. Green*, No. 2112 EDA 2001 (Pa. Sup. Ct. Mar. 25, 2002) ("*Green II*") (attached as Ex. B. to Pet'r's Mem.). A petition for allowance of appeal in the Supreme Court of Pennsylvania was denied on August 14, 2002. *Commonwealth v. Green*, No. 313 MAL 2002 (Pa. Aug. 14, 2002).

---

[3] The PCRA court appointed counsel, who filed briefs stating that she would pursue some, but not all, of Green's claims. She later filed two additional documents, a "no merit brief," in which she recommended dismissal of two of the three claims raised in the initial petition, and a brief in support of the third claim. The PCRA court held a hearing on May 5, 1999, and on August 20, 1999, the court issued an order vacating the appointment of counsel, having determined that appointed counsel's representation of Green was inadequate to ensure a fair review of his claims. The court appointed new counsel, who withdrew in November 1999, citing a conflict of interest. The court appointed a third lawyer and held a second PCRA hearing on December 23, 1999.

Green filed his federal *pro se* habeas corpus petition on January 29, 2003, beyond the statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d)(1). He asserted seven grounds for relief, two relating to his right to a fair trial, four relating to his right to effective assistance of counsel, and one relating to his right to file a habeas corpus petition without governmental obstruction. For the seventh and final ground, he alleged that prison staff had prevented him from filing a timely petition by confiscating his legal papers and failing to return them to him for a period of several months.

On April 6, 2003, Green supplemented his petition to include an additional ground for relief relating to his right to a fair trial. Respondents argued that the entire petition should be dismissed as time barred.

On September 2, 2003, the magistrate judge issued a report and recommendation concluding that equitable tolling did not apply and that Green's claim was therefore time barred under AEDPA. Green timely filed objections to the report and recommendation, arguing that the magistrate judge underestimated his diligence in trying to retrieve his legal papers and that he should be granted equitable tolling for the period during which his papers were in the custody of prison staff. In their answer to Green's objections, respondents asserted that they had been unable, through reasonable investigation, to uncover information sufficient to establish the truth of Green's factual claims concerning his diligence in attempting to recover his legal papers.

I appointed Green's current counsel and held an evidentiary hearing on June 25, 2004. Thereafter, in a November 8, 2004, memorandum and order, I ruled that equitable tolling applied and that the claims in Green's original petition were therefore timely. I also ruled that the April 6, 2003, amendment was time barred unless it related back to the original petition and remanded the

case to the magistrate judge to resolve Green's claims on the merits. *Green v. Stickman*, No. 03-674, 2004 U.S. Dist. LEXIS 22624 (E.D. Pa. Nov. 8, 2004).

On November 22, 2005, before the magistrate judge had addressed the merits of Green's claims,[4] Green filed a motion to amend his habeas petition and hold the habeas proceedings in abeyance pending the exhaustion of his state remedies. He argued that while researching a supplemental memorandum of law, he discovered the existence of a new claim, namely, that his due-process and fair-trial rights were violated by the trial judge's failure to recuse himself.

On February 24, 2006, the magistrate judge issued a report and recommendation, recommending that Green's motion be granted and that the case be held in abeyance pending state-court exhaustion of his claim. Respondents did not file any objections to the magistrate's report and recommendation, and I granted Green's motion in a memorandum and order dated July 26, 2006. *Green v. Folino*, No. 03-674, 2006 U.S. Dist. LEXIS 51103 (E.D. Pa. July 26, 2006).

On April 28, 2006, the PCRA court dismissed Green's new claim for relief (Green had filed a PCRA petition in the Court of Common Pleas on January 10, 2006) without permitting discovery or holding an evidentiary hearing. Green filed a timely appeal in the Pennsylvania Superior Court, and that court affirmed the PCRA court's denial of relief on January 23, 2007.

Having exhausted his state-court remedies, Green once again pursued federal habeas

---

[4] On March 31, 2005, the magistrate judge stayed Green's petition pending a decision by the U.S. Supreme Court in *Mayle v. Felix*, 545 U.S. 644 (2005), in which the Court addressed the question whether, under Federal Rule of Civil Procedure 15(c)(2), a habeas petitioner's amended petition related back to his original petition for purposes of AEDPA's statute of limitations. The magistrate judge lifted the stay on July 14, 2005, and ordered Green to file a supplemental memorandum of law in support of his habeas petition.

relief in this court. After completing discovery with respect to the new claim for relief, however, Green's counsel "concluded that no further relief can be granted by this Court" and, on October 15, 2007, moved to file a second amended petition striking that claim. (Pet'r's Mot. to Amend Habeas Pet. ¶ 9.) I granted the motion on October 16, 2007.

Green filed this second amended petition for habeas relief on October 17, 2007, asserting three claims, each of which has been adjudicated on the merits by the Pennsylvania state courts: (1) he was denied a fair trial and due process of law because the prosecution failed to disclose the existence and terms of a cooperation deal it allegedly made with an eyewitness to secure her testimony; (2) trial counsel was ineffective for failing to object to the trial court's instruction that the jury could treat rebuttal testimony as to two witnesses' prior inconsistent statements as substantive evidence; and (3) trial counsel was ineffective for failing to request that the trial court instruct the jury that a particular witness's testimony must be received with caution, as required under *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954). Respondent submitted a reply to Green's petition on December 5, 2007, and briefing was completed in January 2008.

After the parties had completed a substantial amount of discovery on a consent basis, on February 11, 2009, I issued a stipulated scheduling and discovery order granting Green leave to serve deposition subpoenas, as needed, on witnesses identified by Green's and respondent's counsel and mandating that the authorized depositions be completed within ninety days. I issued orders on May 11, 2009, August 10, 2009, and November 12, 2009, extending, by agreement of counsel, the time to complete the depositions. On February 18, 2010, I granted Green leave to take the deposition of John M. Morganelli, the Northampton County district attorney, who was involved in the investigation and prosecution of Green's case and who is serving as respondent's

5

counsel in this matter.

I heard oral argument on August 17, 2010, and denied Green's first claim on the basis of the findings and conclusions set forth on the record following argument on that claim. Accordingly, here I address only Green's two ineffective-assistance-of-counsel claims.

## II.  STANDARD OF REVIEW

AEDPA empowers federal courts to grant habeas corpus relief to a petitioner "in custody pursuant to the judgment of a State court" if the petitioner's custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Where, as here, a petitioner's claim was adjudicated on the merits in state court, habeas relief is unwarranted unless the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d).

A state court's decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). And a state court's decision involves an "unreasonable application" of federal law when "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

6

at 413. The "unreasonable application" inquiry is an objective one, *id.* at 409–10, and "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [clearly established law] incorrectly," *Woodford v. Visciotti*, 537 U.S. 19, 24–25 (2002) (per curiam) (explaining that a federal habeas court may not "substitute[] its own judgment for that of the state court"). Rather, the state court's application of the law must be "objectively unreasonable." *Williams*, 529 U.S. at 409. "This distinction creates 'a substantially higher threshold' for obtaining relief than *de novo* review," *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)), and "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'" *id.* (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)).

In his brief, Green contends that AEDPA's deferential standard of review does not apply here and that his claims are instead subject to plenary review, because the Pennsylvania state courts did not "rule[] under the U.S. Constitution" or applicable federal law. (Pet'r's Mem. at 28; *see also id.* at 31.)

"AEDPA's deferential standards of review do not apply unless it is clear from the face of the state court decision that the merits of the petitioner's constitutional claims were examined in light of federal law as established by the Supreme Court of the United States." *Jacobs v. Horn*, 395 F.3d 92, 100 (3d Cir. 2005) (internal quotation marks and citation omitted). But the state court need not cite federal law in order for AEDPA's deferential standard to apply; "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent, AEDPA's general rule of deference applies." *Priester v. Vaughn*, 382 F.3d 394, 398 (3d Cir. 2004).

Green's claims of ineffective assistance of counsel are governed by *Strickland v.*

7

*Washington*, 466 U.S. 668 (1984), which qualifies as clearly established federal law within the meaning of 28 U.S.C. § 2254(d)(1). *See Williams*, 529 U.S. at 391. Although neither the PCRA court nor the Pennsylvania Superior Court cited *Strickland* and the two state courts instead relied on Pennsylvania case law in assessing Green's ineffectiveness claims,[5] the Third Circuit has held that the Pennsylvania standard for assessing claims of ineffective assistance of counsel is consistent with *Strickland*. *See Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000); *see also Commonwealth v. Pierce*, 527 A.2d 973, 976–77 (Pa. 1987) (holding that the Pennsylvania standard for assessing ineffectiveness claims is "identical" to the *Strickland* standard). Accordingly, AEDPA's deferential standard of review applies here. *See Priester*, 382 F.3d 394 (applying AEDPA's deferential standard in reviewing habeas petitioner's claims, including claim of ineffective assistance of counsel, even though the Pennsylvania court cited only Pennsylvania law).[6]

### III. DISCUSSION

Green claims that he is entitled to habeas relief because he received ineffective assistance of counsel. Green claims that trial counsel was ineffective, first, for failing to object to the trial court's instruction that the jury could treat rebuttal testimony as to two witnesses' prior inconsistent statements as substantive evidence and, second, for failing to request that the trial court instruct the jury that a particular witness's testimony must be received with caution, a so-

---

[5] The Superior Court relied on *Commonwealth v. Wallace*, 724 A.2d 916 (Pa. 1999), and *Commonwealth v. Kimball*, 724 A.2d 326 (Pa. 1999). The PCRA court relied primarily on *Commonwealth v. Drass*, 718 A.2d 816 (Pa. Super. Ct. 1998).

[6] At oral argument, Green's counsel seemingly abandoned this argument, acknowledging that AEDPA's deferential standard applies here.

called *Kloiber* instruction.

Under *Strickland*, a habeas petitioner seeking relief for ineffective assistance of counsel must show that (1) "counsel's performance was deficient" and (2) the "deficient performance prejudiced [him]." *Strickland*, 466 U.S. at 687. To be deficient, counsel's performance must fall "below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice, a petitioner must show that "counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

### A. Failure to Object to Jury Instruction Regarding Prior Inconsistent Statements

Green claims that trial counsel was ineffective for failing to object to the court's instruction that the jury could treat rebuttal testimony as to two witnesses' prior inconsistent statements as substantive evidence, rather than considering it only for impeachment purposes.[7]

Green presented an alibi defense at trial and presented witnesses who testified that he was not at the scene of the crime when the shooting occurred. Among those alibi witnesses were James Robertson and Antonio Currence. Robertson testified that at about 11:30 p.m. on the night

---

[7] At oral argument, Green's counsel withdrew Green's cognate claim of ineffectiveness for failing to object to the testimony of these same two witnesses.

of the murder,[8] Green came to Kendall Scavella's house (where Robertson was living at the time) looking for Antonio Currence. (Trial Tr. at 662:14–664:12 (Oct. 16, 1996).) On cross-examination, the prosecutor asked Robertson whether, when interviewed by the police, he had told Officer John Remaley that Kendall Scavella would not allow Green in her house and that he had not seen Green for about two weeks, but Robertson denied making such statements. (*Id.* at 666:7–22.) The other alibi witness, Currence, also testified that Green came to Kendall Scavella's house at about 11:30 p.m. and that, after a brief conversation, he and Green walked across the street so that Green could ask someone for a ride home. (*Id.* at 635:1–637:17.) On cross-examination, Currence denied telling Detective Douglas Schlegel that he "didn't hang with [Green] anymore" and that he "hadn't seen him for some months." (*Id.* at 646:17–647:1.)

In rebuttal, the prosecution called Officer Remaley and Detective Schlegel to testify. Officer Remaley testified that when he interviewed Robertson on February 7, 1996, ten days after the murder, Robertson did not tell him that he had seen Green on the night of the murder. He testified that Robertson told him that Kendall Scavella "no longer welcomed" Green at her house and that as a result he had not seen Green for about a week or two before the murder. (*Id.* at 740:14–742:5.) Detective Schlegel testified that he interviewed Currence on January 31, 1996, and that when he asked Currence whether he had seen Green, Currence told him that "he had not seen him in some months, approximately back to November of '95." (*Id.* at 728:14–729:7.)

---

[8] The shooting with which Green was charged occurred at approximately 11:37 p.m. (Pet. at 1.) On January 28, 1996, at 11:38 p.m., police officers were dispatched to a Uni-Mart located at 13th and Northampton Streets in Easton, Pennsylvania, where a car had reportedly crashed into a wall and was on fire. (Trial Tr. at 66:2–14, 75:6–22 (Oct. 14, 1996).) When the police officers pulled the driver, Binh Tran, out of the car, they discovered that he had a gunshot wound to the head. (*Id.* at 24:7–15, 67:2–69:6.)

10

The trial court instructed the jury that such prior inconsistent statements could be used as substantive evidence as well as for impeachment purposes:

> In this case, you will recall that we had testimony from many witnesses which was in conflict with prior statements of the same witnesses. I am not going to name them all. The District Attorney and defense counsel have referred to these individuals.
>
> You have heard testimony that some of the witnesses have made a statement or statements on an earlier occasion that was inconsistent with testimony presented during the course of the trial.
>
> You may, if you choose, regard this as proof of the truth of anything the witness said in the earlier statement. You may also consider this evidence to help you judge the credibility and the weight of the testimony given by the witness at this trial.
>
> You are to consider the prior statements of the witnesses not only as casting potential doubt as to their trial testimony, but you may also consider their prior statements as substantive proof or evidence. That is: You should give such prior statements the same weight and believability as testimony at trial. You are going to have to weigh that. You are going to have to look. There is conflicting testimony. You can either view it simply as impeaching—that is drawing into question their credibility or you can accept the earlier statement as being true or the later statement as being true and accept it as substantive evidence. That's going to be for you to determine.

(*Id.* at 898:22–900:7 (Oct. 17, 1996).)

Green claims that under Pennsylvania law, the testimony of Officer Schlegel and Officer Remaley as to the prior inconsistent statements of the two defense witnesses may be used for impeachment purposes only and that trial counsel was ineffective in failing to object to the court's instruction that the jury could use such testimony as substantive evidence.

Although "federal habeas corpus relief does not lie for errors of state law," *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (internal quotation marks and citation omitted), a claim of ineffective assistance of counsel that is based on the failure to object to an error of state law is cognizable, *see Carpenter v. Vaughn*, 296 F.3d 138, 159 (3d Cir. 2002) ("We . . . hold that the failure of trial counsel to object based on state law to the judge's answer to the jury's question

11

violated [the petitioner's] constitutional right to the effective assistance of counsel." (footnote omitted)); *see also Jacobs*, 395 F.3d at 114 (considering "[w]hether counsel rendered ineffective assistance by failing to object to the *corpus delicti* charge under state law"); *Priester*, 382 F.3d at 401–02 (considering whether counsel's failure to object to jury instruction on state-law grounds constituted ineffective assistance of counsel).[9]

In *Commonwealth v. Lively*, the Pennsylvania Supreme Court held that a prior inconsistent statement may be "used as substantive evidence only when it was given under oath at a formal legal proceeding; or the statement is reduced to a writing signed and adopted by the declarant; or the statement is recorded verbatim contemporaneously with the making of the statement." 610 A.2d 7, 8 (Pa. 1992). Because the prior inconsistent statements of the two alibi witnesses, Robertson and Currence, were made during the course of interviews with police and were neither given under oath nor reduced to a writing that was signed by the witnesses nor recorded, the PCRA court concluded that, under *Lively*, the statements were inadmissible as substantive evidence. *See Green I*, slip op. at 11. The PCRA court accordingly concluded that "trial counsel erred in failing to prevent this testimony from being admitted as substantive

---

[9] In *Carpenter*, "[t]he Commonwealth assume[d] . . . that counsel may be found ineffective for purposes of federal habeas corpus review when the allegation of ineffectiveness is premised exclusively upon the failure to raise a state law claim." 296 F.3d at 159 n.17. Neither party briefed the issue, and the Third Circuit accepted the Commonwealth's assumption, noting only that "[t]he contrary argument seems implausible." *Id.* Since then, the Third Circuit has considered claims of ineffective assistance of counsel that are based on the failure to object to alleged errors of state law without separately addressing whether such claims are cognizable. *See, e.g.*, *Grant v. Wilson*, 282 F. App'x 138 (3d Cir. 2008) (not precedential) (considering whether counsel was ineffective for failing to object to asserted hearsay testimony); *Jacobs*, 395 F.3d at 113–14; *Priester*, 382 F.3d at 401–02. And in a nonprecedential case decided just before *Carpenter*, the Third Circuit considered whether counsel was ineffective for failing to request a cautionary jury instruction required under state law. *See Johnson v. Vaughn*, 38 F. App'x 717 (3d Cir. 2002) (not precedential).

evidence." *Id.*[10]

---

[10] Defense counsel did suggest, in a meeting in chambers after the court had instructed the jury, that the instructions had misstated the law. Defense counsel noted that in its instructions, the court had said that prior inconsistent statements could be used as substantive evidence, and pointed out that "the correct statement of the law may be that it could be used as substantive evidence only if it's under oath or . . . unless it's simultaneously recorded[,] and you may have made a blanket statement that all of it is substantive." (Trial Tr. at 934:15–21 (Oct. 17, 1996).) The court then clarified its instructions to the jury:

> Counsel have pointed out three points, as I understand it. I want to clarify them . . . .
>
> First of all, I gave you a charge concerning what we call impeachment testimony, and that's testimony where evidence was offered that statements were made by witnesses on a prior occasion—that is prior to this trial, which you may find are inconsistent with the testimony offered during the trial.
>
> Those statements—those conflicting statements are used and can be used for two purposes: They can be used, one, to impeach, to suggest that someone is not telling the truth. They can also, in a special circumstance, be used as substantive evidence, but there is a special condition for such use.
>
> There is evidence, in this case, that one or more of the Commonwealth's witnesses previously testified under oath or in a tape recorded statement to statements which differ from statements that they made here. You are to consider the prior statements not only as casting doubt on their trial testimony, but you may also consider it as substantive evidence.
>
> That is: You should give such prior statements the same weight and believability as their testimony at trial, but that's a special case.
>
> You recall the recorded statement—the tape recorded statement, and I believe there was—there may also have been a reference to testimony given at a preliminary hearing. That's number one.

(*Id.* at 937:3–938:16.)

While there was at least one witness whose prior statements were recorded—the recording was played at trial and the jury received a transcript of the recording (*see id.* at 571:6–19 (Oct. 16, 1996))—the court did not specifically address the prior inconsistent statements of the two alibi witnesses or the fact that because their statements had not been given under oath or reduced to a writing that was signed by either of the witnesses or recorded, the statements could be used only for impeachment purposes; nor did defense counsel object to the court's failure to do so.

Neither the PCRA court nor the Superior Court appears to have considered these instructions. Whether this clarification would have altered the state courts' conclusion that trial counsel erred in not objecting to the jury instructions, however, is irrelevant because, as discussed below, the courts concluded that there was no prejudice to Green and this conclusion was not unreasonable. *Cf. Strickland*, 466 U.S. at 697 (asserting that "a court need not determine whether counsel's performance was deficient . . . [i]f it is easier to dispose of an ineffectiveness

13

The PCRA court nonetheless denied relief, asserting that Green was not prejudiced by trial counsel's error. *Id.* at 11–12. The court noted that an eyewitness testified that she was with Green and saw him shoot the victim and that the testimony of the two alibi witnesses did not refute this eyewitness testimony. *Id.* The court characterized the alibi testimony as "provid[ing] far less than an airtight alibi" since the witnesses' testimony indicated that Green was present just a few blocks from the scene of the crime around the time of the shooting. *Id.* at 12. The court thus concluded that there was no reasonable probability that absent counsel's error, the outcome of the proceedings would have been different and, accordingly, concluded that Green was not entitled to relief. *Id.*

The Pennsylvania Superior Court reached the same conclusion, asserting that although the trial court "may have misspoken in charging that the statement[s] could be substantively considered," there was no prejudice to Green because counsel's error in failing to object to the jury instructions "can in no sense be seen as undermining the truth-determining process so that no reliable adjudication of guilt or innocence could have taken place." *Green II*, slip op. at 7.

The legal standard applied by the Pennsylvania Superior Court is fully consistent with *Strickland*. Accordingly, the question here is whether the Superior Court's decision involved an unreasonable application of *Strickland*, and I conclude that the Pennsylvania court's application of the law was not unreasonable.

Green has failed to demonstrate that the Superior Court's conclusion that he was not prejudiced by trial counsel's failure to object to the instruction that the prior inconsistent statements could be used as substantive evidence was objectively unreasonable. Even if the jury

---

claim on the ground of lack of sufficient prejudice").

did use the prior inconsistent statements as substantive evidence, those statements do not provide any evidence of Green's culpability—the prior statements neither place Green at the scene of the crime nor in any way suggest his involvement in the crime. Indeed, credited as substantive evidence, the prior statements merely establish that Green had no alibi (or at least not the alibi that Robertson and Currence testified to)—which is not a substantially different conclusion than would be reached if the prior inconsistent statements were used merely to impeach the in-court testimony of these two alibi witnesses. The Pennsylvania courts thus reasonably concluded that Green has not met his burden of demonstrating a reasonable probability that, absent trial counsel's error, the result of the proceedings would have been different. And I therefore cannot conclude that the Superior Court's decision involved an unreasonable application of federal law.

At oral argument, Green's counsel contended that, in determining whether Green was prejudiced by trial counsel's error, the Superior Court failed to consider the totality of the circumstances, as required by *Strickland*. *See Strickland*, 466 U.S. at 695 ("In making this [prejudice] determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury."). Counsel essentially argued that in determining whether Green has satisfied the prejudice prong of the *Strickland* test, the court must consider all of Green's claims together rather than looking at each alleged error in isolation and cannot ignore the fact that, as counsel asserted, the prosecution had a weak case.

The strength of the prosecution's case, however, is not at issue. Rather, the relevant inquiry is whether there is a reasonable probability that the result of the proceedings would have been different if the jury had been instructed that the prior inconsistent statements of the two alibi witnesses could be considered only for impeachment purposes. For the reasons set forth above, I

15

cannot find such a reasonable probability. In addition, because, as discussed in the next section, trial counsel committed no error in failing to seek a cautionary jury instruction (Green's second claim), there can be no prejudicial effect from that alleged error to consider here.

Because the Superior Court's decision was not unreasonable, Green is not entitled to habeas relief for this claim.

### B. Failure to Request *Kloiber* Instruction

Green claims that trial counsel was ineffective for failing to request that the trial court instruct the jury that a particular witness's testimony must be received with caution, as required under *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954).

At trial, the prosecution called as a witness Michael Hanley, who had been a prisoner at the Northampton County Prison in February 1996, when Green was imprisoned there. (Trial Tr. at 476:4–477:1 (Oct. 15, 1996).) Hanley testified that he overheard Green say, "I shot the fucker." (*Id.* at 482:2–7.) Although Hanley did not see the speaker's face—he saw only the speaker's arms—he unequivocally identified Green as the speaker; he testified that he knew which cell was Green's, that he was about five feet away from Green's cell, and that Green was the only person in that cell. (*Id.* at 479:3–480:21, 482:8–24, 484:22–485:1.) Hanley also testified, however, that he had seen inmates go into other inmates' cells "[on] occasion." (*Id.* at 487:5–7.)

Green claims that under Pennsylvania law, because Hanley did not clearly observe Green, the trial court should have instructed the jury that Hanley's testimony must be received with caution—a so-called *Kloiber* instruction—and that trial counsel was ineffective for failing to request such a jury instruction.

16

In *Kloiber*, the Pennsylvania Supreme Court, expressing concern about the reliability of eyewitness identifications, held that

> where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution.

106 A.2d at 826–27.

Noting that Hanley had "unequivocally stated that [Green] was the person in the cell who made the comment," that "Hanley knew [Green] and . . . knew which cell he was in," and that Green "was the only person in that particular cell," the PCRA court held that *Kloiber* did not apply. *Green I*, slip op. at 8. The court accordingly held that trial counsel's failure to request a *Kloiber* instruction was not in error. *Id.* The Superior Court agreed, adopting the reasoning of the PCRA court. *Green II*, slip op. at 6.

Green argues that the Pennsylvania courts erred in ruling that *Kloiber* does not apply, contending that "entitlement to the instruction does not turn solely on whether the witness'[s] identification is equivocal, as the state courts ruled here." (Pet'r's Mem. at 31.)

Whether *Kloiber* applies is a question of state law, however, and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (U.S. 1991). Because the Pennsylvania courts concluded, as a matter of state law, that *Kloiber* does not apply and thus that Green was not entitled to a *Kloiber* instruction, under *Strickland*, trial counsel was not ineffective in failing to request such a jury instruction. *See Priester*, 382 F.3d at 402 (holding that because the state court determined that the jury instruction at issue comported with state law, the federal habeas petitioner could not

17

demonstrate that counsel's performance was deficient, as required under the first prong of the *Strickland* test); *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."). The Superior Court's decision was thus not an unreasonable application of *Strickland*, and accordingly, Green is not entitled to habeas relief for this claim.

## IV. CONCLUSION

For the reasons set forth above and on the record during oral argument, I find Green's claims to be without merit. Accordingly, I will deny Green's petition.

Finally, I must determine whether I should issue a certificate of appealability. A habeas petitioner may not appeal the dismissal of his petition unless he receives a certificate of appealability from the district court or the circuit court. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). I have found Green's claims to be without merit, and I am persuaded that reasonable jurists would not find this assessment debatable or wrong. Because Green has failed to make a substantial showing of the denial of a constitutional right, I will not issue a certificate of appealability with respect to any of Green's claims.

An appropriate order accompanies this memorandum.